## SCHOOL DIST. NO. 65 et al. v. BOARD OF COM'RS OF PAYNE COUNTY et al.

No. 20797. Opinion Filed Feb. 10, 1931.

Rehearing Denied March 10, 1931.

6

Brown Moore, Guy L. Horton, and Paul Myrick, for plaintiffs in error.

Wilcox & Swank, for defendants in error.

RILEY, J.  School district No. 56, of Payne county, is an independent district. School district No. 65, of said county, is a common school district.  The districts adjoin each other.

On June 17, 1929, a petition purporting to be signed by 37 qualified electors of the common school district was presented to the county superintendent.  It was styled "Petition to County Superintendent to Change School District Boundaries."  It stated that the signers "represent that we compose more than one-third of the qualified electors residing in the territory petitioned to be changed."  The object set out in the petition was "to change said district boundaries as follows: (1) By attaching all of district 65 to district 56, Payne county."  The county superintendent on said day, without notice, made an order finding said petition contained the names of 57 per cent. of the qualified voters residing in the common school district and that it would be for the best interest of both districts to make the change sought and abolishing said common school district and annexing all the territory theretofore embraced within it to the independent district.

An appeal was taken to the board of county commissioners and a hearing had thereon; one member of the board disqualified; the remaining members voted one to sustain the appeal and one to the contrary.

Appellants then secured issuance of a writ of certiorari and a temporary restraining order from the district court.  Upon hearing the district court sustained a demurrer to plaintiffs' evidence and dismissed plaintiffs' petition, from which judgment this appeal was perfected.

Plaintiffs in error contend the judgment of the district court was erroneous for the reason that, (first) a petition signed by a majority of the qualified electors of the common school district, as required by section 10405, C. O. S. 1921, was never presented to

the county superintendent; and (second) the action of the county superintendent was without notice.

The conclusion of plaintiffs in error is correct.  Section 10405, C. O. S. 1921, is the statute applicable to the object sought and it provides the necessary procedure.  It reads in part as follows:

"Territory outside the limits of any city or town within an independent district may be added to or detached from such city or town for school purposes **upon petition** to the county superintendent of public instruction by a **majority** of the qualified electors of the territory desiring to be attached to or detached from such city or town. * * *"

Such a petition is jurisdictional.  The statutory requirement is "a majority."  It is not sufficient that the county superintendent independently of the petition finds a majority signed it.  The petition itself must disclose the fact.  For the county superintendent to find a majority, a hearing must be had.  A hearing contemplates notice, an opportunity to examine witnesses, adduce evidence and exercise many other rights.

Proceedings before the county superintendent under section 10405, supra, have been held to be valid without notice.  Common School Dist. No. 49 v. Wolfe, 94 Okla. 87, 221 Pac. 42; Fowler v. Green, 73 Okla. 319, 176 Pac. 222; School Dist. No. 9, Tulsa County, v. Board, etc., 138 Okla. 254, 280 Pac. 807.  Nevertheless, no decision has held that the county superintendent is authorized to act under section 10405, Id., until a petition sufficient upon its face is presented to that officer.

The petition presented to the county superintendent not only fails to disclose a majority, but affirmatively represents by its words that it contains merely more than one-third of such qualified electors.  It does not disclose the number of electors residing within the district, so that upon examination of the number of signatures upon the instrument the jurisdictional facts would be ascertained despite the conclusion therein stated as to signers constituting one-third of such electors.  The petition simply contains 37 signatures described as stated.

We are familiar with the rule of law of presumption as to the validity and regularity of official acts of public officers within line of their ministerial and administrative duties.  Board of Education of the City of Pond Creek v. Francis Boyer, etc., 5 Okla. 225, 47 Pac. 1090.

Nevertheless, where notice or hearing is not provided by the statute of procedure,

the jurisdictional facts must appear as warrant and authority for the acts of an officer. Potter v. Sch. Trustees, 10 Ill. App. 343; In re Mt. Pleasant Twp. Ind. Sch. Dist., 10 Pa. Co. Ct. R. 588; In re Wolfe, 8 Kulp (Pa.) 181.

In the Mt. Pleasant Case, supra, it was held:

"A petition for an independent school district must set forth every substantive, material and affirmative fact which by the language of the statute is made indispensable to the erection of such a district."

In the Potter Case, supra, it was held:

"School officers derive all their authority from the statute and can exercise no power not granted."

The petition in that case was held "radically defective" because it did not aver that the signers constituted two-thirds of the legal voters of the territory sought to be set off, nor that the district had no bonded debt, which under the statute applicable was required to exist as facts, as a condition precedent to a change.

This petition is upon a form as suggested by the requirement and for the purposes set forth in section 10321, C. O. S. 1921, relating to change in school district boundaries wherein the requirement as to number of signatures is one-third of the qualified electors, and wherein 20 days notice is mandatory as a condition precedent to action by the county superintendent. Had the petition presented been sufficient within its terms to show the majority recited by the county superintendent in his order, the result would be different. The fact remains that the county superintendent was without authority to act under section 10405, supra, until such time as there was presented to him a petition which upon its face showed a majority of the required electors' signatures. A majority of such electors, petitioning, was just as essential as the exercise of discretion by the county superintendent. It would be almost as reasonable to hold that a majority of such electors could independently find a person whom they thought to be the county superintendent (but who may or may not have been) as it would be to hold the county superintendent could, independently of the petition, find a majority of the qualified electors of the district. Especially is this true when the purported finding is ex parte.

The result is that the order of the county superintendent disorganizing the common school district and annexing the territory of it to the independent district is void.

Judgment reversed, with directions to enter judgment in accord with the views herein expressed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, ANDREWS, and McNEILL, JJ., concur.

KORNEGAY, J., concurs in conclusion.

SWINDALL, J., dissents.

---

SWINDALL, J. (dissenting.) In my opinion it is the substance and not the form of the petition that gives the county superintendent jurisdiction of the petition. In Common School District No. 49 v. Wolfe, 94 Okla. 87, 221 Pac. 42, this court said:

"Section 10405, supra, provides for the annexation of territory to independent districts by county superintendents 'upon petition (to him) by a majority of the qualified electors of the territory desiring to be attached to or detached from such city or town.' This section makes no provision for notices to be given by posting or otherwise by the county superintendent. All that section 10405 provides is that, whenever such a petition signed by a majority of the qualified electors is filed with the county superintendent, then, 'if he deems it proper and to the best interests of the school of such city or town, he shall issue an order attaching such territory to or detaching such territory from such city or town for school purposes, and such territory shall, after being attached from the date of such order, be and compose a part of such city for school purposes only.'"

In the case of Fowler v. Green, 73 Okla. 319, 176 Pac. 222, the first two paragraphs of the syllabus are as follows:

"Territory outside the limits of any city or town within an independent school district may be detached from said independent school district when a petition is presented to the county superintendent signed by a majority of the qualified electors residing in said territory sought to be detached, and, if the county superintendent deems it to be for the best interests of the parties presenting said petition, he may enter an order detaching said territory, and such order does not require that the independent school district have notice of such intended action of the superintendent making such order.

"An order made by the county superintendent detaching territory from an independent school district under section 2, art. 6, c. 219, Session Laws 1913, when a proper petition has been presented requesting such action, if no appeal is taken therefrom, after the expiration of ten days becomes a final order."

In School District No. 9 of Tulsa County

v. Board of Commissioners of Tulsa County, Mr. Justice Riley in delivering the opinion of this court said:

"Section 10405, C. O. S. 1921, provides the method for annexing territory to independent school districts. The same requires, as a condition precedent to such a change, a petition directed to the county superintendent and signed by a majority of the qualified electors of the territory desiring to be attached (or detached) to such city or town."

What is a proper petition? In my opinion, a proper petition is one stating the objects and purposes which the qualified electors seek to accomplish signed by a majority of the qualified electors residing in the district, and it is immaterial that the body of the petition should state that the signers constitute a majority of the qualified electors, but that fact is determined from the number signing and not from recitals in the petition.

I, therefore, most respectfully dissent.